**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **WENDELL ETHRIDGE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:19-cv-01125** |
| ) | **Judge Aleta A. Trauger** |
| **STATE FARM FIRE AND CASUALTY** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM and ORDER

The plaintiff, Wendell Ethridge, filed this lawsuit to compel defendant State Farm Fire and Casualty Company ("State Farm") to provide coverage for damage to the plaintiff's boat dock, allegedly incurred in June 2019, pursuant to an insurance policy issued by State Farm that covered the boat dock. The sole issue in dispute is whether the damage to the boat dock was caused by wind (a covered cause of loss) or by water or waves (an excluded cause). The defendant's retained expert, Todd Duncan, has opined that the damage to the boat dock was not caused by wind and was instead the result of repeated water waves. (Doc. No. 67, at 6.) The plaintiff's retained expert, Robert Hinojosa, has produced a report opining that "it is more likely than not that the boat dock was damaged as a direct result of the high wind events at the end of June 2019." (Doc. No. 46-4, at 8.)

Now before the court are the defendant's motion seeking to exclude the plaintiff's designated expert from testifying at trial altogether (Doc. No. 45) and the plaintiff's motion seeking to limit the scope of the defendant's expert's testimony (Doc. No. 48). Each party opposes the other's motion. (Doc. Nos. 69, 62.)

For the reasons set forth herein, the defendant's motion (Doc. No. 45) will be denied, and the plaintiff's motion (Doc. No. 48) will be granted in part and denied in part.

## I.     LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence, which governs the admission of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has interpreted this rule to require trial judges to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. These prerequisites apply, not only to "'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting Fed. R. Evid. 702). Thus, "*Daubert* attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

Although there is "no definitive checklist or test" to strike this balance, relevant factors to be considered include: (1) whether a theory or technique "can be (and has been) tested," (2) whether a "theory or technique has been subjected to peer review and publication," (3) the "known or potential rate of error," and (4) whether the theory or technique is generally accepted. *Daubert*,

509 U.S. at 593–94. These factors are not exhaustive, and the inquiry is "a flexible one." *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011) (citations omitted). District courts must be mindful that "the gatekeeping inquiry must be 'tied to the facts of a particular case.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 591) (internal quotation marks omitted). Experts "need not testify to what is known to a certainty," *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 590) (internal quotation marks omitted), may state inferences derived from the scientific method, *Daubert*, 509 U.S. at 590, and may make deductive conclusions based on physical observations. *Kumho*, 526 U.S. at 156; *Mackenzie v. JLG Indus., Inc.*, No. 3:13-CV-01046, 2014 WL 7375546, at *8 (W.D. Ky. Dec. 29, 2014). As long as the proffered testimony "is properly grounded, well reasoned, and not speculative," district courts should admit it, as "the rejection of expert testimony is the exception rather than the rule." *W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 300 F. Supp. 2d 600, 602 (W.D. Tenn. 2004) (citations omitted).

District courts must also be careful not to weigh one party's expert testimony against the other party's expert testimony, *Jahn*, 233 F.3d at 391, as the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. 595. When a trial judge has doubts about the strength of proffered testimony, exclusion is not the remedy, but rather "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). Finally, "the proponent of the testimony . . . must establish its admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

## II.     THE DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT

Citing Rule 702 and *Daubert*, State Farm argues that Hinojosa should be precluded from testifying, because his opinions are "not based upon reliable facts and methods." (Doc. No. 46, at 1.) The motion is largely based on the fact that Hinojosa did not actually observe the damaged boat dock.

It is undisputed that the plaintiff replaced the damaged dock with a new dock of a different design in the fall of 2019, after State Farm denied his claim but months before he retained Hinojosa as an expert in this case. Hinojosa inspected the new dock on April 28, 2020 and provided a report dated May 11, 2020, summarizing his conclusions. His report is based upon information, photographs, and a video provided by the plaintiff and upon photographs, information, and calculations contained in State Farm's expert's report. Citing *Daubert*, the defendant moves to exclude Hinojosa's opinion, "[b]ecause Mr. Hinojosa's conclusions are based on facts provided to him almost exclusively by Plaintiff—clearly not an unbiased party—and because he never inspected the structure about which he is offering an opinion." (Doc. No. 46, at 4.)

More particularly, the defendant argues that the "root problem" with Hinojosa's analysis is that his opinions and findings are based on information that he never personally reviewed or that was provided to him by "an interested party." (*Id.* at 5.) State Farm also complains that Hinojosa's conclusion that the dock was not damaged by waves was based on a video provided by the plaintiff that allegedly captured a "normal" level of boat traffic and that Hinojosa did not actually perform any kind of wave flow or river analysis in preparing his report. (*Id.*) As such, the defendant contends, Hinojosa's opinion that the damage was not caused by waves was based on unreliable data and is without scientific basis, published theories or support, or reasonable calculations. (*Id.*)

To be clear, State Farm does not contest Hinojosa's qualifications as an expert in the field of structural engineering. The sole basis for the defendant's objection to Hinojosa's testimony

appears to be that the proffered opinions are not based on an inspection of the actual damaged dock, which was dismantled and removed in the fall of 2019, before the plaintiff retained Hinojosa. As the plaintiff points out in his Response, however, expert witnesses are "permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. That Hinojosa's opinions are based on photographs and information provided by the plaintiff (and by the defendant's expert) does not make them inherently speculative or unreliable. Where an expert's opinion "has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis" on cross-examination. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530–31 (6th Cir. 2008) (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)). In other words, exclusion is not the appropriate remedy under the circumstances presented here; rather, the defendant can vigorously cross-examine Hinojosa as to the reliability of the facts upon which his opinions are based. *See id.* (noting that "mere weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility" (internal quotation marks and citation omitted)). The same analysis applies to the defendant's claim that the information provided to Hinojosa by the plaintiff is tainted by bias.

The defendant's Motion to Exclude Hinojosa from Testifying at Trial (Doc. No. 45) will, therefore, be denied.

## III.    THE PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERT

The plaintiff does not dispute the qualifications of State Farm's proffered expert, Todd Duncan, as a structural engineer, to offer opinions about structural integrity, structure weight, and the wind speed necessary to damage a structure. The plaintiff argues, however, that Duncan is not qualified to proffer opinions regarding the relative reliability of weather data from CoreLogic (upon which Hinojosa relied) as opposed to Weather Underground (Duncan's preferred source of

weather data) or about other meteorological data and wind speed determinations—specifically, that the maximum wind speeds reported by CoreLogic referred to "wind gusts" rather than "sustained winds." The plaintiff also argues that Duncan's opinions in these arenas are not based on reliable facts or data as required by Rule 702 and, instead, are based on presumption and speculation. (Doc. No. 48, at 5-6, 8–10.) In addition, the plaintiff contends that Duncan should not be permitted to testify about matters of "common knowledge" that would not assist the trier of fact. (Doc. No. 48, at 7.)

### A.    Meteorological "Opinions"

In response to the plaintiff's motion to exclude Duncan's testimony on "meteorological" issues outside the scope of his expertise, State Farm argues that "the extent of Mr. Duncan's meteorological testimony would be confined to how he chose a wind speed data source" (Doc. No. 62, at 8) and that Duncan "does not need to be an expert in meteorology to testify [about] how he chose one data source over another" (*id.* at 7). State Farm further argues that, because this information may assist the trier of fact to assess the reliability of his testimony, Duncan should be allowed to "explain the source of the information, data, and facts he relied upon to reach his conclusion the dock was not damaged by wind." (*Id.* at 8.)

State Farm's Response does not address the plaintiff's objection to Duncan's testimony and opinions regarding whether CoreLogic's reported maximum wind speeds referred to "gusts" or "sustained winds." Based on State Farm's decision not to respond to that objection, the court will grant that portion of the plaintiff's motion and order that Duncan may not testify that the maximum wind speeds reported by CoreLogic referred to "wind gusts" rather than "sustained winds."[1]

---

[1] Barring Duncan from testifying on this issue, of course, would not preclude State Farm from cross-examining the plaintiff's expert about his reliance on CoreLogic data and, in particular,

Insofar as the plaintiff seeks to bar Duncan from explaining the basis for his decision to rely on Weather Underground's data, however, the motion will be denied. The source and reliability of his data is a matter for cross-examination by the plaintiff, rather than exclusion, and this information will assist the jury in assessing the reliability of the witness's opinion. This portion of the plaintiff's motion will be denied, and Duncan will be permitted to testify about "how he chose a wind speed data source." (Doc. No. 62, at 8.)

### B. Opinions on Matters of "Common Knowledge"

The plaintiff also asserts, in conclusory fashion, that Duncan should be barred from offering opinion testimony on matters of "common knowledge" that would not assist the trier of fact. (Doc. No. 48, at 7.) *See Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994) ("If everyone knows [a particular fact], then [the court] do[es] not need an expert because the testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue . . . .'" (quoting Fed. R. Civ. P. 702) (ellipsis in original)).

Specifically, the plaintiff argues that Duncan should be barred from testifying about: (1) the "sub-par condition of the dock"; (2) "the absence of metal anchorage on the dock"; (3) "how far the flood poles were driven into the mud"; and (4) a tree that "was blown down in the storm." (*Id.*) In response to this argument, State Farm does not address (3) and (4), essentially conceding that Duncan does not intend, or need, to testify about how far the flood poles were driven into the mud or about a tree blown down in the storm. (*See* Doc. No. 62, at 8–9.) Regarding (1) and (2), State Farm argues simply that Duncan, as the only proffered expert who actually inspected the

---

about the fact that the CoreLogic data states "on its face . . . that the wind speeds are 'estimated'" and "also states on its face that the reported wind speeds 'represent 3-second wind gusts at 10 meters.'" (*See* Doc. No. 67, at 7.)

damaged dock, should be allowed to testify about his observations of the dock and their influence on his opinions.

This part of the plaintiff's motion will also be granted in part and denied in part. Duncan will be precluded from testifying about "how far the flood poles were driven into the mud" and a tree that "was blown down in the storm." (Doc. No. 48, at 7.) However, Duncan's other observations about the physical condition of the damaged dock are based on personal knowledge; they formed the basis for some of his engineering opinions and are clearly relevant and admissible. The plaintiff's motion will be denied insofar as it seeks to exclude that testimony.

IV.    **CONCLUSION AND ORDER**

1.    The defendant's Motion to Exclude (Doc. No. 45) is **DENIED**.

2.    The plaintiff's Motion to Exclude (Doc. No. 48) is **GRANTED IN PART AND DENIED IN PART**, as specified above.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge